DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Curtis A. Stearns, appeals from both his conviction for trafficking in cocaine and his sentence, in the Lorain County Court of Common Pleas. We affirm in part, reverse in part, and remand
 I {¶ 2} On October 10, 2002, the Lorain County Grand Jury indicted Mr. Stearns on the following: (1) one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32, a first degree felony; (2) three counts of trafficking in cocaine, in violation of R.C. 2925.03(A), fifth degree felonies; (3) four counts of trafficking in cocaine, in violation of R.C.2925.03(A), fourth degree felonies; (4) one count of trafficking in cocaine, in violation of R.C. 2925.03(A), a third degree felony; (5) two counts of trafficking in cocaine, in violation of R.C. 2925.03(A), second degree felonies; (6) one count of trafficking in cocaine, in violation of R.C. 2925.03(A), a first degree felony; (7) one count of possession of cocaine, in violation of R.C. 2925.11(A) a third degree felony; (8) eight counts of possession of drug paraphernalia, in violation of R.C.2925.14(C)(1), fourth degree misdemeanors; (9) three counts of possession of criminal tools, in violation of R.C. 2923.24(A), fifth degree felonies; (10) one count of permitting drug abuse, in violation of R.C. 2925.13(A), a fifth degree felony; and (11) one count of driving while under suspension, in violation of R.C.4509.101/4507.02(B)(1), a first degree misdemeanor.
 {¶ 3} Mr. Stearns pled not guilty to all charges. On March 24, 2004, Mr. Stearns withdrew his not guilty plea and pled guilty to all charges as amended. On or about May 6, 2003, Mr. Stearns filed a motion to withdraw his guilty plea, pro se, which was later granted by the trial court.
 {¶ 4} Mr. Stearns waived a jury trial. Pursuant to a bench trial, the court returned not guilty verdicts as to the one count of engaging in a pattern of corrupt activity and one count of possession of drug paraphernalia, and returned guilty verdicts as to all the remaining counts.[1] On August 22, 2003, the trial court sentenced Mr. Stearns to an aggregate seven and one-half years in prison on the charges, and imposed fines. It is from his conviction for trafficking in cocaine and his sentence that Mr. Stearns now appeals.
 {¶ 5} Mr. Stearns timely appealed, asserting two assignments of error for review.
 II A. First Assignment of Error
"The appellant's conviction for trafficking in [crack] cocaine as alleged in count eleven (11) of the indictment was against the manifest weight of the evidence presented to the trial court [.]"
 {¶ 6} In this first assignment of error, Mr. Stearns contends that his conviction for trafficking in cocaine was against the manifest weight of the evidence. In his argument for this assignment of error, Mr. Stearns appears to also contend that the conviction is not supported by sufficient evidence in the record. In support of his first assignment of error, Mr. Stearns essentially argues that the State did not establish that the party engaged in the drug transaction with Mr. Stearns "purchased anywhere near th[e] quantity of cocaine from [him]" required by the particular statute section that he was charged with. Mr. Stearns' contentions lack merit.
 {¶ 7} As an initial matter, we note that Mr. Stearns did not make a motion for acquittal per Crim.R. 29(A) at the trial court level. It is a fundamental principle of appellate review that a court will not consider an error that an appellant was aware of, yet failed to bring to the attention of the trial court. Statev. Taylor, 9th Dist. No. 21307, 2003-Ohio-2025, at ¶ 21, citingState v. Awan (1986), 22 Ohio St.3d 120, 122 and State v.Williams (1977), 51 Ohio St.2d 112, 117. In order for a defendant to preserve the right to appeal the sufficiency of the evidence upon which his conviction is based, he or she must timely file a motion for acquittal per Crim.R. 29. State v.Liggins (Aug. 18, 1999), 9th Dist. No. 19362. Therefore, if a defendant fails to make a Crim.R. 29 motion, he or she waives any challenge regarding the sufficiency of the evidence on appeal. Id. Thus, Mr. Stearns has waived any objection to the sufficiency of the evidence, and we will therefore not consider that portion of Mr. Stearns' first assignment of error.
 {¶ 8} We now address Mr. Stearns' argument that his conviction for trafficking in cocaine is against the manifest weight of the evidence. A manifest weight challenge questions whether the State has met its burden of persuasion. State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} R.C. 2925.03(A) provides:
"No person shall knowingly * * * [s]ell or offer to sell a controlled substance [or] [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C.2925.03(A)(1)-(2).
Before a conviction for an offer to sell a controlled substance pursuant to R.C. 2925.03(A) can be obtained, the State must present evidence to establish that, at the time of the offer, the accused both "intended to make a sale of an actual controlled substance" and that he or she "reasonably had the ability to effect such sale." State v. Jacobs (Jan. 3, 1990), 9th Dist. No. 14089, citing State v. Patterson (1982), 69 Ohio St.2d 445,448 (Holmes, J., concurring in judgment). In the instant case, Mr. Stearns argues that the State failed to establish that the confidential informant, Luis Martinez ("Martinez"), purchased at least 25 grams[2] of crack cocaine. However, "[a]n offer to sell does not require a transfer of the controlled substance because the proscribed conduct is offering to sell a controlled substance and not offering the controlled substance." (Emphasis added.) Jacobs, supra, citing State v. Scott (1982),69 Ohio St.2d 439, 440 and Patterson, 69 Ohio St.2d at 446.
 {¶ 10} The State presented the testimony of various detectives who were involved in the investigation of Mr. Stearns. The Lorain Police Department Narcotics Unit employed confidential informants and performed surveillance of the informants conducting a series of negotiations and transactions with Mr. Stearns, which involved the sale of crack cocaine. Detective Tom Nimon testified that he kept Mr. Stearns under surveillance until the informant had arrived on the scene, and watched the drug purchases. He witnessed a number of "controlled buys" involving Mr. Stearns which occurred between July and September of 2002. Detective Nimon testified, "I believe[ed] we ha[d] a couple quarter ounce purchases[;]" he stated that from one of the controlled buys he "kn[e]w [they] ha[d] a one ounce offer[,]" which amounts to 28 grams of crack cocaine. In addition, Detective Nimon testified, that, based on his surveillance of these events and his experience in this area, Mr. Stearns was a "mid-level drug dealer[,]" and that Mr. Stearns had the ability to and "could have obtained an ounce of crack cocaine." Detective Nimon testified that he observed Mr. Stearns meet with another drug dealer, Michael Simpson ("Simpson"), and that he knew Simpson as a person who had the ability to supply an ounce of crack cocaine. He further testified that during this series of surveillances, he had followed Mr. Stearns to the home of another individual who he believed also had the ability to supply an ounce of crack cocaine.
 {¶ 11} Detective Brett Bangas also testified about his involvement in these investigations on behalf of the State. Detective Bangas testified that he monitored a motel in the city of Lorain at which Mr. Stearns was known to conduct drug transactions. Detective Bangas testified that during one such controlled buy, Mr. Stearns offered to sell a one-fourth ounce amount of crack cocaine to the informant, which is approximately seven grams, for $300.00. Detective Bangas further testified that in the two-hour time span after this controlled buy, approximately 12 different people, some known as crack addicts, entered the motel room to meet with Mr. Stearns. In addition, Detective Bangas testified that Simpson, a "substantial drug dealer[,]" arrived at the motel, and that a hand-to-hand exchange occurred between him and Mr. Stearns; based on his experience and knowledge of both individuals, Detective Bangas concluded that this was a drug transaction.
 {¶ 12} Martinez, the confidential informant working for the Lorain Police Department and who was involved in a number of controlled buys with Mr. Stearns, also testified on behalf of the State. Martinez testified that prior to the time that he started working with the police, he had purchased crack cocaine from Mr. Stearns approximately 30 times. He also testified that during controlled buy negotiations with Mr. Stearns on September 18, 2002, he and Mr. Stearns discussed a transaction involving a "whole one"; he explained that this phrase refers to a one-ounce amount of crack cocaine. Particularly, Martinez testified, "I asked for an ounce, and [Mr. Stearns] said a whole, and I said how much for a whole[.]" He also testified that approximately $1,000 was offered for the amount of crack cocaine to be purchased.
 {¶ 13} Lieutenant James Rohner also testified on behalf of the State. Lieutenant Rohner testified that he investigated two controlled buys at the motel involving Mr. Stearns on August 28, 2002. Lieutenant Rohner further testified that during these two controlled buys, he observed Simpson arrive at the motel with his girlfriend, Nancy Davila ("Davila"). He testified that Simpson entered the motel room, while Davila stayed in the car. Lieutenant Rohner then testified that Simpson walked back outside to the passenger side of the car where Davila was sitting, and that some sort of "exchange" occurred between the two. He testified that Simpson then walked back over to where Mr. Stearns was standing, and that Davila exited the car and walked to the rear of the motel and out of sight. Lieutenant Rohner testified that he interviewed Mr. Stearns regarding this particular incident, and that Mr. Stearns stated that Davila had left the scene because at that time "she possessed approximately nine ounces of cocaine" and money. Furthermore, Lieutenant Rohner testified that during this interview, Mr. Stearns supplied the name of another "major drug offender[,]" Lamar Reed ("Reed"), who had previously been caught with crack cocaine and was arrested. He testified that Reed is "some[one] who has had the ability in the past to supply" an ounce of crack cocaine.
 {¶ 14} After a careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Mr. Stearns of trafficking in crack cocaine. See Otten, 33 Ohio App.3d at 340. Based upon the testimony presented, one can conclude that Mr. Stearns possessed the intent to actuate a sale of at least one ounce, or 25 grams, of crack cocaine, and that he reasonably had the ability to procure a sale of 25 grams of crack cocaine at the time of the transactions. See Jacobs, supra. It is unnecessary to establish for such a conviction that an actual transfer of such an amount of this substance occurred. See Jacobs, supra; R.C. 2925.03(A). Therefore, we find that Mr. Stearns' conviction for trafficking in crack cocaine is not against the manifest weight of the evidence.
 {¶ 15} Accordingly, Mr. Stearns' first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court abused its discretion in sentencing the appellant to a maximum term of five (5) years incarceration on count ten (10) of the indictment and in its imposition of consecutive sentences without making the required findings on the record."
 {¶ 16} In his second assignment of error, Mr. Stearns contends that the trial court abused its discretion when it sentenced Mr. Stearns to a maximum term on his conviction for trafficking in cocaine, a third-degree felony, and also when it imposed consecutive sentences. Mr. Stearns avers that the trial court did not make the required findings on the record.
 {¶ 17} First, we note the appropriate standard of review. An appellate court may remand a matter on appeal for resentencing if it clearly and convincingly finds that the court's findings are unsupported by the record, or that the sentence imposed by the trial court is otherwise contrary to law. R.C. 2953.08(G)(2). Clear and convincing evidence is evidence "which will produce * * * a firm belief or conviction as to the allegations sought to be established." State v. Eppinger, 91 Ohio St.3d 158, 164,2001-Ohio-247, quoting Cross v. Ledford (1954),161 Ohio St. 469, 477.
 {¶ 18} R.C. 2929.19, which governs sentencing hearings, provides that the sentencing court
"shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:" * * *
"(c) If it imposes consecutive sentences under [R.C.] 2929.14
* * *;
"(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense [under R.C. 2929.14(A).]" R.C. 2929.19(B)(2).
Furthermore, the Supreme Court of Ohio has held that in instances in which a court imposes consecutive or nonminimum sentences, the court is required to make the statutorily required findings on the record at the sentencing hearing. State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at paragraphs one and two of the syllabus. Thus, when reviewing the trial court's imposition of maximum and consecutive sentences in this case, our review must focus on the record of the sentencing.
 {¶ 19} First, we address Mr. Stearns' challenge to the imposition of a maximum prison term with respect to his conviction for a lesser included offense to R.C. 2925.03(A), trafficking in drugs, a third-degree felony. The trial court sentenced Mr. Stearns to the maximum term of five years with respect to this conviction. See R.C. 2929.14(A)(3). R.C.2929.14(C) provides in relevant part:
"[T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *."
 {¶ 20} Mr. Stearns claims that the trial court failed to make on the record the finding that he posed the greatest likelihood of recidivism, per R.C. 2929.14. We find to the contrary. The record reveals that the trial court did in fact find at the sentencing hearing that Mr. Stearns posed the greatest likelihood of recidivism based upon the court's review of his record. Specifically, the prosecutor asked the court whether it finds that "the defendant poses the greatest likelihood of recidivism, based upon his record[,]" and the judge responded affirmatively. We have previously stated, that, "[a]lthough it is the better practice for a trial court to make its findings for imposing maximum and consecutive sentences on the record without
prompting from the [S]tate, such a method of placing the findings on the record is not legally deficient." State v. Armstrong,152 Ohio App.3d 579, 2003-Ohio-2154, at ¶ 10.
 {¶ 21} Therefore, we find that the trial court made the required findings on the record, and as such, substantially complied with the requirements of R.C. 2929.14(C) in imposing the maximum sentence for this conviction. See Armstrong at ¶ 10; R.C. 2929.14(C) and 2929.19(B)(2). Therefore, we cannot clearly and convincingly conclude that the maximum sentence imposed upon Mr. Stearns, with respect to the third-degree felony trafficking in cocaine conviction, was unsupported by the record or otherwise contrary to law. See R.C. 2953.08(G)(2); Armstrong at ¶ 6.
 {¶ 22} Next, we address Mr. Stearns' challenge to the court's imposition of consecutive sentences. R.C. 2929.14(E)(4) sets forth the factors that a sentencing court, in choosing to impose consecutive sentences, is required to find at the sentencing hearing. This subsection provides that the court may impose consecutive sentences if it finds the following:
"(4) * * * that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed * * *, or was under post-release control for a prior offense.
"* * *
"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." (Emphasis added.) R.C.2929.14(E)(4).
 {¶ 23} The sentencing hearing transcript indicates that the trial court addressed the R.C. 2929.14(E)(4) factors as follows:
"[THE STATE]: * * * [I]f consecutive, [does the Court find] that the defendant committed multiple offenses while awaiting trial and sentencing, and under post-release control, for being on parole?
"THE COURT: That's what we have here, yes.
"[THE STATE]: Right. And that it was necessary to protect the public?
"THE COURT: No question."
 {¶ 24} Just as we noted above with respect to the trial court's imposition of the maximum sentence in this case, the State's prompting of the court's findings pertaining to consecutive sentences is not legally deficient. See Amstrong at ¶ 10. Furthermore, we note that the trial judge stated on the record at the sentencing hearing its reasons, which relate to the imposition of consecutive sentences:
"[T]he Court, as indicated, has reviewed the statute pertaining to sentencing, and the pre-sentence report. * * * I was a little taken aback when I saw the record [Mr. Stearns] has. I mean, he's been in some kind of trouble clear back in the [19]80's. He's chosen, basically, to follow that rather than getting a job and working."
 {¶ 25} However, based upon the discussion between the State and the trial court quoted above, we cannot find that the court fully complied with the statutory requirements of R.C.2929.14(E)(4). Specifically, the court failed to address whether the consecutive sentences imposed are not disproportionate to the seriousness of Mr. Stearns' conduct and to the danger he poses to the public, as specified in R.C. 2929.14(E)(4). The failure by the court to address the disproportionality factor of R.C.2929.14(E)(4) renders the trial court's imposition of consecutive sentences in this case contrary to law. See R.C. 2953.08(G)(2);Armstrong at ¶ 6. See, also, State v. Sullivan (Dec. 22, 1999), 9th Dist. No. 19452; State v. Castle, 2nd Dist. No. 02CA09, 2003-Ohio-45, at ¶ 37-39; State v. Morales, 11th Dist. No. 2001-L-084, 2002-Ohio-7133, at ¶ 15-16; State v. Grimsley,
12th Dist. No. CA2003-03-061, 2004-Ohio-1710, at ¶ 31.
 {¶ 26} Accordingly, Mr. Stearns' second assignment of error is overruled with respect to his challenge to the maximum sentence, and sustained with respect to the imposition of consecutive sentences.
 III {¶ 27} Mr. Stearns' first assignment of error is overruled. Mr. Stearns' second assignment of error is sustained in part, and overruled in part. The conviction in the Lorain County Court of Common Pleas is affirmed. The portion of Mr. Stearns' sentence that imposes consecutive sentences is vacated, and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
Baird, J., concurs.
Carr, P.J., concurs in judgment only.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
[1] On the two counts of trafficking in cocaine, second degree felonies, the court returned a guilty verdict on a lesser included offense, a third-degree felony.
[2] See R.C. 2925.03(C).